UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SILVER DREAM, L.L.C.                                    CIVIL ACTION

v.                                                      NO. 10-3658

3MC, INC., CHARLES CHEN and                             SECTION "F"
MEI CHEN d/b/a SILVER SALON

ORDER AND REASONS

Before the Court is the defendants' Motion for Summary Judgment to Enforce Settlement. For the reasons that follow, the motion is GRANTED.

Background

This copyright infringement and unfair competition lawsuit concerns a New Orleans Saints football-themed jewelry design, in which a fleur de lis is impressed with images of a football, the Louisiana Superdome, and the words "Who Dat," "NOLA," and "Believe Dat". This design was conceived and created by Silver Dream in the fall of 2009, and jewelry incorporating the design has been sold in New Orleans since that time.[1] Silver Dream owns and holds United States Copyright Registration No. VA 1-732-632, issued by the United States Copyright Office, for its design.

On October 16, 2010 Silver Dream LLC sued 3MC, Inc. and

---

[1] Silver Dream is a small jewelry company owned and operated by husband and wife Joe and Lety Tumulty; Mrs. Tumulty creates many of the jewelry designs, including the one at issue.

Charles and Mei Chen, d/b/a Silver Salon in this Court, asserting a willful federal copyright infringement claim, as well as state law claims sounding in unfair competition and unfair trade practices.[2]  Silver Dream seeks preliminary and permanent injunctive relief, damages, and attorneys fees.  Silver Salon, which operates stores in Jax Brewery and the Riverwalk Mall in New Orleans, is one of Silver Dream's competitors; both are based in and operate out of New Orleans.  Silver Dream alleges that Silver Salon has been selling and marketing a knock-off of Silver Dream's design.

After negotiations between counsel, the parties agreed to settle Silver Dream's claims in early December 2010.  Certain substantive terms of the Settlement Agreement, which mandates that Louisiana law shall govern its construction, include:

(1)  The defendants agree to pay Silver Dream $1,850;
(2)  The Chens agree to execute original affidavits[3]

---

[2] This is not the first litigation instituted concerning this design.  In August 2010 Silver Dream sued another competitor, Sterling Silvia, for copyright infringement in another Section of this Court.  See Silver Dream, LLC v. Mayan Obsessions, Inc., No. 10-2580 (E.D.La. Aug. 6, 2010).  On June 10, 2011, Judge Vance granted the parties' joint motion to dismiss the case with prejudice and to dissolve the preliminary injunction.  See id. at Rec.Doc. 30.  Silver Dream now contends that, during that prior litigation, it learned that infringing items sold by Sterling Silvia were manufactured and sold to Sterling Silvia by Primarose Co., Ltd., a Thailand-based company.

[3] Regarding paragraph 2 of the Agreement relating to Settlement Affidavits, the Agreement provides that "Silver Salon warrants and represents that the information provided in the Affidavit is materially true, complete and exact."

      listing: (a) the identity and contact information of their manufacturer/wholesaler of the fleur de lis pendants which allegedly infringed the Silver Dream design; (b) the number of allegedly infringing pendants Mrs. Chen purchased; (c) the number of allegedly infringing pendants the Chen defendants sold; (d) the price charged by the Chen defendants for the allegedly infringing pendants; and (e) the identity of any other parties known by the Chen defendants to offer the allegedly infringing pendants for sale;

(3) The Chen defendants agree to surrender any jewelry in their inventory that allegedly infringed the Silver Dream design;

(4) The Chen defendants agree to acknowledge Silver Dream had protectable claims of copyright in the Silver Dream design, as that design is depicted in Silver Dream's complaint; and

(5) The Chen defendants agree to a permanent injunction, prohibiting their future sale of any design substantially similar to the Silver Dream design and agree to a consent motion with Silver Dream in this regard.[4]

---

    [4]Paragraph 5 of the Agreement provides:

    5. **Permanent Injunction**. Silver Salon shall not sell, offer for sale, distribute, market, advertise, display or otherwise promote any jewelry product incorporating any design that is identical or substantially similar to the Silver Dream Design. Contemporaneous with the execution of this Agreement, counsel for Silver Dream and Silver Salon will execute and file a Consent Motion for Permanent Injunction in the form attached....

The Consent Motion for Permanent Injunction states:

    Defendants Charles Chen, Mei Chen and 3MC, Inc. and their officers, agents,...and all other persons in active concert, privity or participation with any of the defendants are hereby enjoined from selling, offering for sale, distributing, marketing, advertising, transferring, displaying or otherwise promoting any jewelry product incorporating

In exchange for these concessions, Silver Dream agreed to dismiss all claims against the Chen defendants within 30 days of its receipt of a signed original of the Settlement Agreement, the settlement payment, and the requisite inventory.  On December 20, 2010 the Chen defendants tendered $1,850 to Silver Dream, executed and produced the settlement affidavits,[5] surrendered their allegedly infringing inventory, and agreed to a consent judgment of injunction.  Silver Dream, however, failed to seek dismissal of the lawsuit.[6]

To the contrary, on February 3, 2011 Silver Dream, through counsel, advised Silver Salon that it was terminating the parties' settlement by invoking paragraph 7 of the Agreement, which reserves

---

the Silver Dream design....

[5] In Mrs. Chen's affidavit, for example, she swore under penalty of perjury that "[t]o the best of my knowledge and memory, I purchased five (5) small and five (5) larger sized [pieces]...I marked the small sized pendants for $36.00 and the larger sized for $75.00, but many customers ask for, and receive, a discount. I do not have individual invoices showing the details of sales of the "Who Dat" Fleur de Lis pendants...."

[6] Meanwhile, Silver Dream used the information contained in the settlement affidavits to add a new party: the Chens identified their supplier of the pendants in question as Hendri Sugianto of Malibu International; Silver Dream amended its complaint on January 10, 2011, adding Malibu International Jewelry, Inc. as a defendant.
      Also, on January 20, 2011 Mr. Tumulty of Silver Dream says that he observed Silver Salon's Charles Chen jointly operating a booth at the French Quarter Market with Yunis Chang and that infringing items identical to the ones sold in Silver Salon's Jax Brewery and Riverwalk locations were being offered for sale at the booth at the French Quarter Market.

to Silver Dream for a period of one year the right to terminate the Agreement if it demonstrates that any material fact in the settlement affidavit is false; paragraph 7 provides:

> 7. **Reservation of Rights**. For a period of one (1) year following the execution of the Agreement, Silver Dream reserves the right to terminate this Agreement if Silver Dream can demonstrate that any material fact in the Settlement Affidavits is false. Notwithstanding the release in paragraph six (6)..., if Silver Dream terminates this Agreement pursuant to this paragraph, this Agreement becomes null and void and Silver Dream may elect to prosecute the Action as if this Agreement had never been reached; in such instance, the release in paragraph six (6) above shall have no effect.  Silver Dream shall provide written notice of termination under this paragraph to Silver Salon's counsel of record at least ten (10) days before filing any pleading seeking to resume prosecution of the Action.

In invoking its termination right, Silver Dream contends that the company the Chens have identified as having sold the allegedly infringing jewelry, Malibu International Jewelry, Inc., has denied making any such sale to the Chens.  (Nevertheless, when Malibu failed to answer the lawsuit, Silver Dream moved for entry of default on February 28, 2011, which was signed by the Clerk of Court on March 1, 2011.  As yet, the plaintiff has not sought a final default judgment.)

On July 8, 2011 the Court granted the defendants' request for leave to file their amended answer; in their amended answer, the defendants assert a counterclaim against Silver Dream for the company's breach of its obligations under the parties' Settlement Agreement.  The defendants now request that the Court grant summary

judgment in their favor, enforcing the Settlement Agreement, ordering dismissal of the claims against them, entering the agreed-upon injunction, and, finally, directing payment of their attorney's fees and costs pursuant to the Settlement Agreement.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving

6

party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## II.
### A.

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the defendants object to certain materials submitted by the plaintiff in opposition to the defendants' motion.  Before reaching the issue of whether the defendants are entitled to summary judgment enforcing the parties' Settlement Agreement, the Court must first resolve the defendants' objections to certain materials submitted by the plaintiff.

Effective December 1, 2010, Federal Rule of Civil Procedure 56 was amended.  While the standard for granting summary judgment was not changed, the amendments sought to "improve the procedures for presenting and deciding summary-judgment motions...."  See 2010 Amendments Comments on Fed.R.Civ.P. 56.  The comments accompanying the 2010 amendments to Rule 56 explain that subsection (c) "is new"

7

and that "[i]t establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules."[7]  Amended Rule 56(c)(1) provides that a party opposing summary judgment may support its contention that a fact cannot be or is genuinely disputed by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).  Revised Rule 56(c)(2) provides the procedure parties may invoke when a fact is supported by inadmissible evidence:

> **Objection That a Fact is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Fed.R.Civ.P. 56(c)(2). According to the comments following the new

---

[7]The comments accompanying the 2010 amendments note that:

> Subdivision(c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions.  Materials that are not yet in the record–including materials referred to in an affidavit or declaration–must be placed in the record....

rule:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted to the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Finally, the new procedures subsection of Rule 56 addresses materials in the record not cited by the parties and requirements for affidavits and declarations:

> (3) **Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
> (4) **Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Applying this revised procedure, and mindful of the accompanying comments, the Court finds that the defendants' objections have merit. The Court considers each of the challenged forms of evidence in turn.

*B.*

This new procedure calls on the proponent of evidence, when the admissibility of such evidence is placed at issue, to show that the evidence can be presented in a form that *would be* admissible. Silver Dream has made no effort to show that the material is

admissible as presented. Nonetheless, the Court considers the potential admissibility of these materials.

1. Receipts (Type of Jewelry Sold)

The plaintiff contends that the defendants falsely contend that they only sold pendants.[8] The plaintiff must demonstrate that the settlement affidavits contain materially false information; the plaintiff attempts to discharge this burden by submitting receipts of items purchased from the defendants. Mr. Tumulty testified that his mother and some undisclosed person from his attorney's office purchased earrings from the defendants. The plaintiff maintains that the receipts show that the defendants sold earrings, whereas the Settlement Affidavits only mention pendants.

The defendants object to this unsworn, unauthenticated evidence and point out that the receipts themselves do not show what type of jewelry was sold. They say that Mr. Tumulty cannot testify as to sales made to third persons and without those buyers

---

[8]In particular, the plaintiff challenges the portion of Ms. Chen's affidavit in which she states that "[t]o the best of my knowledge and memory, I purchased five (5) small and five (5) larger sized [pieces]. It could have been a few more items than that, but I do not believe that it was many more than five (5) or six (6). This was not a large purchase for my business. Thus, I believe I paid cash for these items and do not have a receipt showing their purchase.... I marked the small sized pendants for $36.00 and the larger sized for $75.00, but many customers ask for, and receive, a discount. I do not have individual invoices showing the details of sales of the "Who Dat" Fleur de Lis pendants...."
    Mr. Chen states in his affidavit that "At the August 2010 Helen Brett show in New Orleans, my wife purchased 10 silver pendants with a 'Who Dat' design from Hendri Sugianto...."

authenticating the receipts, the receipts constitute hearsay[9] and are inadmissible. The Court agrees. However, assuming that Mr. Tumulty's mother testifies at trial to buying earrings from Silver Salon, conceivably at least some of the receipts could become admissible at that time.[10] But even if Mr. Tumulty's mother authenticates receipts at trial and otherwise submits that she purchased earrings from Silver Salon, this evidence does not meaningfully undermine the sworn, qualified statements made by Mrs. Chen in her settlement affidavit.[11] And, therefore, the plaintiff has failed to raise an issue of fact regarding whether the statements made in the affidavit regarding the type of jewelry bought and sold are materially false.

2. Statements Regarding Wholesaler's Identity

The plaintiff next contends that the defendants lied about the wholesaler that they identified in their settlement affidavits. In

---

[9] Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[10] The Court notes that the burden is on the plaintiff to explain the admissible form certain evidence will take, which the plaintiff has failed to do. The Court also suggests that this is a somewhat awkward procedure, in that it seems to demand that the respondent to a motion for summary judgment file a sur-reply to the reply in which the evidentiary objections are raised.

[11] Indeed, she qualifies her statement regarding the purchase of pendants with "[t]o the best of my knowledge and memory...." The Chens' risk, quite obviously, is that proof of a false oath could lead to more devastating consequences than a civil lawsuit.

its attempt to show that the Chens made false statements about sales by Malibu International of the infringing jewelry, the plaintiff submits emails and a letter from Malibu, which apparently has denied selling the allegedly infringing jewelry to the Chens. The defendants object to the submission of these materials on classic hearsay grounds. The Court agrees that the materials submitted by the plaintiff constitute hearsay; they involve out of court statements offered for the truth of the matter asserted. Indeed, these unsworn statements by Malibu, which as a party to this litigation has failed to appear before the Court, are inadmissible. Moreover, the plaintiff has not explained the admissible form that this evidence could take at trial.[12] The Court ought not consider this material; there is no evidence before the Court that creates a dispute as to whether the Chens lied about Malibu supplying them with the infringing pieces.

   3.   Expert/Lay Report Regarding "Implausibly" Low Sales

The plaintiff next contends that it is entitled to invoke its

---

[12]The plaintiff also suggest that Mr. Tumulty has reviewed certain "subpoenaed customs records" that suggest that "the lack of records evidencing shipments from Primarose to Malibu corroborates Malibu's statement that it did not sell the infringing items to Silver Salon." The admissibility of these materials, which are not even in the summary judgment record, is even more dubious. In any event, these are not materials the Court can consider, given that they are not in the record.
   The Court notes that the fact that Malibu continues to be a defendant brought into this case by the plaintiff is odd, given that the plaintiff is simultaneously attempting to demonstrate to this Court that Malibu did not sell the defendants the infringing jewelry.

termination right because the defendants falsely stated the quantity of the infringing pieces they sold. The plaintiff attempts to demonstrate material falsity by submitting some sort of written report by a woman, Susan Bonano, who sells authorized versions of the Silver Dream Design. Based on her own sales, the sales of other authorized sellers, and Silver Salon's advantageous store locations, Ms. Bonano speculates that the Chen defendants' statements that they sold 10-16 items is "implausible" because they could have sold many more pieces: 2,915 versus 10-16 items.

The defendants object to any reliance on this report because it constitutes inadmissible lay or expert opinion. Again, the plaintiff fails to suggest the admissible form that this evidence will take at trial. Even assuming the report is somehow admissible, reliable, and relevant, it does not advance the plaintiff's burden of showing that the statements in the Chens' settlement affidavits are materially false. In other words, if the report somehow reliably shows that the Chens *could* have sold many more items, it falls well short of raising even a dispute as to whether the Chens asserted materially false statements about the quantity of items they *actually* sold.

### III.
#### *A.*

This Court has inherent power to recognize, encourage, and enforce settlement agreements. Bell v. Schexnayder, 36 F.3d 447, 449-50 (5th Cir. 1994)(citations omitted). Federal courts sitting

13

in diversity apply state law when determining the validity of settlement agreements, so long as none of the substantive rights and liabilities of the parties derive from federal law. See, e.g., Lefevre v. Keaty, 191 F.3d 596, 598 (5th Cir. 1999).

The parties agree that Louisiana law governs the interpretation of their agreement to settle their dispute. Louisiana law provides:

> A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.

La. Civ. Code art. 3071. Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it. Elder v. Elder & Elder Enterprises, Ltd., 948 So.2d 348, 351 (La.App. 4 Cir. 2007)(citation omitted). Essential elements of a compromise include: (1) mutual intent to put an end to the litigation; and (2) reciprocal concessions of the parties in adjustment of their differences. Rivett v. State Farm Fire and Casualty Company, 508 So.2d 1356, 1359 (La. 1987).

To be valid under Louisiana law, a compromise (and contracts generally) must meet certain statutory requirements, namely offer and acceptance. Regarding consent, Louisiana Civil Code article 1927 provides:

> A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made

> orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
>
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

La.Civ. Code art. 1927. A compromise "shall be made in writing or recited in open court" (La.Civ.Code art. 3072), and "settles only those differences that the parties clearly intended to settle." La.Civ. Code art. 3076.[13]

*B.*

The Court's role in interpreting contracts is to determine the common intent of the parties. La. Civ. Code art. 2045. In determining common intent, pursuant to Civil Code article 2047, words and phrases used in contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See Henry v. South Louisiana Sugars Co-op., Inc., 957 So.2d 1275, 1277 (La. 2007) (citing Cadwallader, 848 So.2d at 580). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further

---

[13]It is not necessary that all aspects of the compromise be contained in a single document; rather, "[w]here two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected." Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 390 (5th Cir. 2010)(per curiam)(quoting Klebanoff v. Haberle, 978 So.2d 598, 602 (La.App. 2 Cir. 2008)). Furthermore, the writing requirement for a valid compromise may be satisfied by emails. La.R.S. § 9:2607; Preston Law Firm, 622 F.3d at 391 (citations omitted).

interpretation may be made in search of the parties' intent" (La. Civ. Code art. 2046), and the agreement must be enforced as written. <u>Hebert v. Webre</u>, 982 So.2d 770, 773-74 (La. 2008).

*C.*

It is undisputed that Silver Dream and the defendants entered into a valid written compromise. The parties instead dispute whether Silver Dream appropriately invoked its termination right. Silver Dream's right to terminate the Agreement pursuant to Paragraph 7 of the parties' Settlement Agreement turns on whether "Silver Dream can demonstrate that any material fact in the Settlement Affidavits is false."[14]

The defendants seek summary relief on the enforceability of the parties' Settlement Agreement. Because the burden rests on the plaintiff to "demonstrate that any material fact in the Settlement Agreement is false" in order to escape the Agreement's

---

[14] Silver Dream seems to insist that the scope of its termination right is broader, and that it can terminate the Settlement Agreement by proving the inexactness of statements made in the Settlement Affidavits. In so insisting, Silver Dream relies on Paragraph 2, which governs Settlement Affidavits; it provides: "Silver Salon warrants and represents that the information provided in the Affidavit is materially true, complete, and exact." Indeed, the Settlement Agreement contains this provision. Silver Dream fails to persuade the Court, however, that this warranty and representation on behalf of the Chens alters Silver Dream's burden of demonstrating that a material fact is "false" to invoke its termination right. In any event, the Court need not decide this issue because Silver Dream fails to submit competent evidence sufficient to raise a genuine dispute as to a material fact regarding whether the affidavits contain information that is untrue, incomplete, and inexact.

enforceability, the plaintiff must show that a genuine dispute as to material issue of fact exists regarding the material falsity of the Chens' affidavits. The plaintiff fails to do so. Simply presenting a mere argued existence of a factual dispute fails to overcome the defendants' summary judgment evidence. The plaintiff has failed to submit any relevant, competent, authenticated materials that suggest that it can demonstrate that the Chens made materially false statements in their affidavits.[15] Therefore, it cannot invoke its right to terminate the parties' Settlement Agreement.

Accordingly, because the plaintiff has improperly refused to honor the parties' Settlement Agreement, IT IS ORDERED: that the defendants' motion for summary judgment to enforce settlement is GRANTED.[16] IT IS FURTHER ORDERED: that the case is hereby dismissed, and the parties are ordered to comply with and perform

---

[15] Likewise, the plaintiff's suspicion based on Mr. Tumulty stating that he witnessed Charles Chen operate a booth next to a woman selling allegedly infringing jewelry, without more, does not raise an issue of fact as to whether Charles Chen sold infringing items after the Settlement Agreement became effective. If the plaintiff can show that the defendants violated the permanent injunction that the Chens have agreed to be bound by, the plaintiff's recourse is to file the appropriate papers to enforce the terms of the permanent injunction, not to continue to litigate his settled claims.

[16] Of course, if the plaintiff becomes able to demonstrate the material falsity of the statements made in the Settlement Affidavits, it may seek to invoke its termination right at that time, or provoke a federal law enforcement inquiry. In that regard, however, counsel are reminded of their professional obligations under 28 U.S.C. § 1927.

the provisions of their Settlement Agreement.  IT IS FURTHER ORDERED: that the defendants' request for attorney fees and costs associated with the filing of their motion for summary judgment is also GRANTED, in accordance with Paragraph 11 of the parties' Settlement Agreement; any dispute as to quantum will be referred to the magistrate judge for resolution.

        New Orleans, Louisiana, September 8, 2011

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE